UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Tina M. Raymond,
        Claimant

        v.                              Case No. 19-cv-097-SM
                                        Opinion No. 2019 DNH 007

Andrew Saul,[1] Commissioner,
Social Security Administration,
        Defendant


                        **O R D E R**


        Pursuant to 42 U.S.C. § 405(g), claimant, Tina Raymond,

moves to reverse or vacate the Commissioner's decision denying

her application for Disability Insurance Benefits under Title II

of the Social Security Act (the "Act").  See 42 U.S.C. § 423.

The Commissioner objects and moves for an order affirming his

decision.


        For the reasons discussed, claimant's motion is denied, and

the Commissioner's motion is granted.


---

[1]     On June 17, 2019, Andrew Saul was sworn in as Commissioner
of Social Security.  He replaced the nominal defendant, Nancy A.
Berryhill, who had been Acting Commissioner of Social Security.

**Factual Background**

I.  Procedural History.

In October of 2016, claimant filed an application for
Disability Insurance Benefits ("DIB"), alleging that she was
disabled and had been unable to work since February 13, 2013.
Claimant was 49 years old at the time of her alleged onset of
disability and had acquired sufficient quarters of coverage to
remain insured through December 31, 2018.  Claimant's
application was denied and she requested a hearing before an
Administrative Law Judge ("ALJ").

In January of 2018, claimant, her attorney, an independent
medical expert (Dr. John Kwock, a board certified orthopedic
surgeon), and a vocational expert appeared before an ALJ, who
considered claimant's applications de novo.  During Dr. Kwock's
testimony, claimant became agitated and left the room.  She
returned and Dr. Kwok completed his testimony, as did claimant.
At that point, the hearing had gone on for about an hour, the
ALJ indicated that he had to end it soon, and the vocational
expert had yet to testify.  Claimant's attorney asked the ALJ
for a continuance, so the vocational expert could give
testimony.  Claimant's counsel also asked that the ALJ arrange
for claimant to undergo a psychological examination.  The ALJ
agreed to continue the hearing, but declined to rule on the

request for a psychological examination until after he had the opportunity to more carefully review claimant's medical records - particularly those related to her mental health. Ultimately, the ALJ declined to order the psychological examination and neither claimant nor her counsel arranged for claimant to undergo such an examination.

The hearing was continued to May 16, 2018, at which the ALJ heard testimony from a second independent medical expert, Dr. James Claiborn (a board certified psychologist), and Jane Gerrish, an impartial vocational expert. Four weeks later, the ALJ issued his written decision, concluding that claimant was not disabled, as that term is defined in the Act, at any time prior to the date of his decision. Claimant requested review by the Appeals Council. That request was denied. Accordingly, the ALJ's denial of claimant's application for benefits became the final decision of the Commissioner, subject to judicial review. Subsequently, claimant filed a timely action in this court, asserting that the ALJ's decision is not supported by substantial evidence.

Claimant then filed a "Motion for Order Reversing Decision of the Commissioner" (document no. 7). In response, the Commissioner filed a "Motion for an Order Affirming the Decision

of the Commissioner" (document no. 9).  Those motions are
pending.


II.  Factual Background.

A detailed factual background can be found in claimant's
statement of facts (document no. 8) and the Commissioner's
statement of facts (document no. 10).  Those facts relevant to
the disposition of this matter are discussed as appropriate.


**Standard of Review**

I.  "Substantial Evidence" and Deferential Review.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to
enter, upon the pleadings and transcript of the record, a
judgment affirming, modifying, or reversing the decision of the
Commissioner of Social Security, with or without remanding the
cause for a rehearing."  Factual findings and credibility
determinations made by the Commissioner are conclusive if
supported by substantial evidence.  See 42 U.S.C. §§ 405(g),
1383(c)(3).  See also Irlanda Ortiz v. Secretary of Health &
Human Services, 955 F.2d 765, 769 (1st Cir. 1991).  Substantial
evidence is "such relevant evidence as a reasonable mind might
accept as adequate to support a conclusion."  Consolidated
Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  Importantly,
then, it is something less than a preponderance of the evidence.

So, the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.  See Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966).  See also Richardson v. Perales, 402 U.S. 389, 401 (1971).


II.  The Parties' Respective Burdens.

An individual seeking DIB benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A). The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment.  See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health & Human Services, 944 F.2d 1, 5 (1st Cir. 1991).  To satisfy that burden, the claimant must prove, by a preponderance of the evidence, that her impairment prevents her from performing her former type of work.  See Manso-Pizarro v. Secretary of Health & Human Services, 76 F.3d 15, 17 (1st Cir. 1996); Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985).  If the claimant demonstrates an inability to perform her previous work, the burden shifts to the Commissioner to show that there

are other jobs in the national economy that she can perform, in light of her age, education, and prior work experience.  See Vazquez v. Secretary of Health & Human Services, 683 F.2d 1, 2 (1st Cir. 1982).  See also 20 C.F.R. § 404.1512.

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability, as supported by the claimant's testimony or that of other witnesses; and (3) the claimant's educational background, age, and work experience.  See, e.g., Avery v. Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 6 (1st Cir. 1982).  Ultimately, a claimant is disabled only if her:

> physical or mental impairment or impairments are of
> such severity that [she] is not only unable to do
> [her] previous work but cannot, considering [her] age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which [she] lives, or
> whether a specific job vacancy exists for [her], or
> whether [she] would be hired if [she] applied for
> work.

42 U.S.C. § 423(d)(2)(A).

With those principles in mind, the court reviews claimant's
motion to reverse and the Commissioner's motion to affirm his
decision.

## Background - The ALJ's Findings

In concluding that claimant was not disabled within the
meaning of the Act, the ALJ properly employed the mandatory
five-step sequential evaluation process described in 20 C.F.R. §
404.1520.  See generally Barnhart v. Thomas, 540 U.S. 20, 24
(2003).  Accordingly, he first determined that claimant had not
been engaged in substantial gainful employment since her alleged
onset of disability: February 11, 2013.  Admin. Rec. at 22.
Next, he concluded that claimant suffers from the following
severe impairments: "status-post tear in right wrist,
fibromyalgia, carpal tunnel syndrome, and anxiety."  Id.  But,
the ALJ determined that claimant's impairments, whether
considered alone or in combination, did not meet or medically
equal any of the impairments listed in Part 404, Subpart P,
Appendix 1.  Admin. Rec. at 22-24.

Next, the ALJ concluded that claimant retained the residual
functional capacity ("RFC") to perform the exertional demands of
"light" work, subject to the following limitations: "she can
perform no more than frequent fingering or feeling with the

right hand.  She can frequently push and pull with the right

hand.  The claimant should not be in a position that requires a

production pace." Id. at 24.  In light of those restrictions,

the ALJ concluded that claimant was capable of performing her

past relevant work as a laboratory tester.  Id. at 30.  See also

Id. at 51-54 (vocational expert's testimony about claimant's

past relevant work).

Nevertheless, the ALJ continued to the final step in the

analysis.  Relying upon the testimony of the vocational expert,

the ALJ concluded that, notwithstanding claimant's limitations,

"there are other jobs that exist in significant numbers in the

national economy that the claimant can also perform." Id.  As

representative examples of such jobs, the ALJ identified

"cashier," "counter attendant," and "linen grader." Id. at 31.

See also Id. at 54-55 (testimony of vocational expert).  In

light of those findings at both step four and step five of the

analysis, the ALJ concluded that claimant was not "disabled," as

that term is defined in the Act, through the date of his

decision (June 20, 2018).

## Discussion

Claimant challenges the ALJ's decision on four grounds,

asserting that he erred: (1) by failing to arrange for her to

undergo a mental status examination to assess the extent of her
alleged memory problems; (2) by failing to give adequate weight
to claimant's subjective complaints of disabling symptoms
(particularly those relating to her panic attacks); (3) by
failing to give adequate weight to the opinions of claimant's
treating physician, Dr. Anthony Mollano regarding her "permanent
impairment rating" (related to her award of workers'
compensation benefits); and, finally, (4) by making factual
findings that were not supported by substantial evidence.

I.   Lack of Mental Status Examination.

Claimant faults the ALJ for failing to arrange for her to
undergo a mental status examination to assess the extent of her
claimed memory issues.  This court (Barbadoro, J.) has
previously discussed the scope of an ALJ's obligation to fully
develop the evidentiary record, noting:

> Although an ALJ should ordinarily be entitled to rely
> on claimant's counsel to structure and present the
> claimant's case in a way that adequately explores the
> claims, the ALJ is responsible in every case to ensure
> that an adequate record is developed during the
> disability hearing consistent with the issues raised.
> This duty to develop the record is heightened where
> the claimant is not represented by counsel, but
> applies in all cases.  Thus, an ALJ cannot leave the
> record undeveloped where a claim itself seems on its
> face to be substantial, where there are gaps in the
> evidence necessary to a reasoned evaluation of the
> claim, and where it is within the power of the
> administrative law judge, without undue effort, to see

that the gaps are somewhat filled.  The duty has been
described as one of inquiry, requiring the decision
maker to inform himself about facts relevant to his
decision and to hear the claimant's own version of
those facts.

Brunel v. Barnhardt, No. CIV.00-402-B, 2002 WL 24311, at *8

(D.N.H. Jan. 7, 2002) (citation and internal punctuation

omitted).  But, "for an ALJ's failure to develop the record to

constitute reversible error, the claimant must demonstrate that

he or she has suffered some prejudice as a result.  Prejudice is

demonstrated by showing that the additional evidence might have

led to a different decision.  Gilmore v. Berryhill, 2019 DNH 15,

2019 WL 259119, at *3 (D.N.H. Jan. 18, 2019) (citations and

internal punctuation omitted).  Here, claimant has not shown

that a mental status evaluation was warranted or that such an

examination might have yielded evidence that would counsel in

favor of a different outcome.


    Claimant correctly notes that Dr. Claiborn, the non-

examining board-certified psychologist, testified that

complaints of memory loss are "really pretty subjective" and to

evaluate any actual deficit in memory functioning, claimant

would have to undergo a formal mental status examination.

Admin. Rec. at 49.  But, as the ALJ pointed out, the medical

records repeatedly note that claimant retained normal memory.

<u>Id</u>. at 27.  <u>See also</u> <u>Id</u>. at 1045, 1056, 1064, 1067, 1072, 1076,

1079, 1085, 1091, 1098, 1104, 1128, 1136, 1144, 1154, 1185,

1194, 1201, 1204, 1208, 1212, 1214, 1221, 1226, 1231, (all

suggesting that claimant did not suffer from impaired memory and

that her short term memory was intact); <u>id</u>. at 1654 (Neurology

office note from Dr. Borislav Nikolov, reporting that although

claimant was anxious during the examination, she had "normal

mentation" and her "memory [was] intact."); <u>id</u>. at 1885 (same);

1900 (same).  And, after having reviewed all of claimant's

medical records, Dr. Claiborne concluded that claimant's ability

to understand, remember, and apply information was only mildly

impaired.  <u>Id</u>. at 42.

The ALJ supportably credited Dr. Claiborne's medical

opinion.  And, given the sparse record evidence of claimant's

alleged memory impairment, the court cannot conclude that the

ALJ erred when he determined that it was not necessary to

arrange for claimant to undergo a mental status examination.


II.  <u>Claimant's Testimony</u>.

Next, claimant asserts that the ALJ failed to properly

credit her claims of debilitating panic attacks, overall joint

pain and swelling, and pain and numbness in two of her fingers.

The court disagrees.

The ALJ amply supported his RFC decision with references to the medical record. For example, the ALJ noted that "[a]lthough the claimant has subsequently complained of joint pains attributed to fibromyalgia, objective physical examinations do not establish substantial deficits in strength, mobility, and motor skills." Admin. Rec. at 25. He supported that conclusion by, for example, discussing the clinical reports of Dr. Julia Bolding (a rheumatologist who examined claimant in April of 2017) and Dr. Borislan Nikolov, to whom claimant was referred for a neurological consultation. Dr. Bolding diagnosed claimant as suffering from fibromyalgia, after claimant reported that more than 11 of 18 fibromyalgia tender points were positive, "many with vocalization and withdrawal." Admin. Rec. at 1811. Yet, Dr. Bolding also opined that claimant's "somatic complaints are far out of proportion to physical findings." Id. at 1809. She also noted that although claimant had been prescribed Dilaudid for complaints of pain, "Dartmouth long ago stopped giving her narcotics, and recently, Ms. Donovan [the referring advanced nurse practitioner] also declined to provide more narcotics for her." Id. at 1810.

In May of 2017, one month after her consultation with Dr. Bolding, claimant saw Dr. Nikolov for a comprehensive neurological evaluation. Dr. Nikolov reported that, upon

musculoskeletal examination, claimant displayed "no joint deformities.  Full range of motion.  No joint swelling or redness.  No muscular pain on palpation."  Id. at 1885.  He also noted that claimant had normal nerve function, normal motor strength without weakness or atrophy, and "normal physiological gait and posture."  Id. at 1886.  Those findings are plainly inconsistent with claimant's assertion to Dr. Bolding that she experienced "severe pain in every single peripheral and axial joint."  Id. at 1811.  Those findings are, however, entirely consistent with Dr. Bolding's opinion that claimant's assertions of disabling pain throughout her body "are far out of proportion to physical findings."  Id. at 1809.

The ALJ also noted that, in that same general timeframe (February 10, 2017), claimant was seen by Peter Loeser, MD, for an orthopedic examination.  While Dr. Loeser acknowledged claimant's assertions of "constant daily severe pain in all joints to an equal degree," id. at 754, he was largely unable to duplicate that pain in the office or diagnose a cause.  See generally Id. at 754-57 (noting that claimant had "no noted tenderness on palpation" of the cervical spine, thoracic spine, or lumbar spine; "normal range of motion of the shoulders, elbows, wrists and hands bilaterally without noted pain"; "No noted pain on palpation of the shoulders, elbows, wrists, hands

bilaterally"; "normal range of motion of the hips, knees,

ankles, and feet bilaterally without noted pain.  No pain on

palpation of the hips, knees, ankles, and feet"; and "Normal

ability to sit and stand, step up and down, get on and off the

examination table, remove and put back on shoes, squat and rise

from squat, ambulate, and walk on the balls and heels of both

feet.").  Ultimately, with respect to claimant's complaints of

widespread, chronic, debilitating pain, Dr. Loeser reported:

> **Chronic pain**: Other than abdominal pain to palpation
> with recent surgery for ostomy reversal, there are no
> significant findings on physical examination.  There
> is available documentation related to the patient's
> surgical history on her right forearm and bowels, but
> there is no available documentation related to chronic
> widespread joint pain.  The patient is very pleasant
> to speak with, appears uncomfortable both at rest and
> with movement, and ambulates slowly but with relative
> ease around the examination room without any apparent
> deficits or impairments.

Id. at 756.


From the record evidence, the ALJ sustainably concluded

that although claimant has been diagnosed with fibromyalgia - an

impairment the ALJ deemed "severe" - the "objective physical

examinations do not establish substantial deficits in strength,

mobility, and motor skills."  Id. at 25.  That determination is

amply supported by substantial record evidence, including the

findings, observations, and conclusions of Dr. Loeser, Dr.
Bolding, and Dr. Nikolov.

The ALJ did not erred in assessing claimant's testimony
and/or her subjective complaints of disabling pain.  He properly
evaluated claimant's symptoms and limitations, and his findings
are amply supported by substantial evidence in the record.

Finally, claimant seems to assert that her various
outbursts at the two hearings before the ALJ compel the
conclusion that her panic attacks are, standing alone,
disabling.  See Claimant's Memorandum (document no. 7-1) at 3
("Frankly, the content of Ms. Raymond's testimony and panic
attacks she experienced at the hearings would lead even a
layperson to believe that she is seriously impaired.").  But, of
course, what a layperson believes about claimant's panic attacks
is largely irrelevant.  Whether they are real and, if so, the
extent to which they are disabling (or impose functional
limitations upon claimant) is not something about which the ALJ
is permitted to speculate.  Rather, he must (as he did) ground
his decision in the record evidence.

III. Opinions of Claimant's Treating Physician.

In discussing the weight that will be ascribed to the opinions of "treating sources," the regulations applicable to claimant's appeal provide that, "Generally, we give more weight to medical opinions from [the claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)." 20 C.F.R. § 404.1527(c)(2). See also Social Security Ruling, Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions, SSR 96-2p, 1996 WL 374188 (July 2, 1996). Importantly, however, there is no per se rule requiring the ALJ to give greater weight to the opinion of a treating source. To be entitled to controlling weight, a treating source's opinions must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [cannot be] inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).

Here, claimant faults the AJL for not giving more substantial weight to the opinion of a treating physician, Dr. Anthony Mollano. Dr. Mollano treated claimant for an injury to her right wrist (a longitudinal split tear of the ulnar tendon), which she sustained after slipping and falling at work on

February 11, 2013.  In December of 2014, Dr. Mollano submitted a

letter in which he stated:

> Tina Raymond is a patient well known to me.  She had a
> right wrist pain from a work injury that required
> surgical treatment in April, 2013, with ECU sheath
> release.  She also had wrist ligament pathology
> treated with arthroscopy.  She did have a difficult
> recovery with significant limited range of motion and
> significant limited function to forearm and then
> underwent a second surgery with an examination under
> anesthesia and a manipulation on 5/12/2014.  She does
> have <u>residual impairment of her forearm</u> with limited
> forearm range of motion and does have chronic pain
> both of which qualify her for a <u>permanent impairment
> rating</u>.

Admin. Rec. at 609 (emphasis supplied).  But, as the ALJ noted,

Dr. Mollano's opinion that claimant has "residual impairment of

her [right] forearm" and a "permanent impairment rating" is

"vague and not a function-by-function assessment of the

claimant's abilities despite her right wrist impairment."  Id.

at 29.  The ALJ also noted that Dr. Mollano had not treated

claimant for approximately six months prior to issuing that

opinion letter and, therefore, did not have the benefit of the

more recent physical examinations documented in the record.

Moreover, during the "examination under anesthesia"

referenced in his letter, Dr. Mollano reported:

> After the induction of general anesthesia, I was

easily and lightly able to manipulate the forearm into
full supination.  The elbow had full range of motion.
I was able to fully pronate and fully supinate the
forearm.  There was no snapping of the ECU tendon.
The DRUJ was stable.  There was no crepitation.  There
was no indication for steroid injections or any other
treatments.  A sugar-tong splint was placed with the
elbow at 90 degrees in full supination with the plan
being to keep the splint on for 2 weeks and then start
therapy thereafter.

Id. at 446 ("Operative Report" dated May 12, 2014).  Two weeks

later, Dr. Mollano examined claimant and reported that she had

"no structural or anatomic pathology," and he again noted that,

while under anesthesia, claimant had "full forearm range of

motion and wrist range of motion with no contracture."  Id. at

434.  In light of his understanding of claimant's wrist injury,

her treatment history, and her recovery to date, Dr. Mollano

opined that "[i]t would be confounding and difficult to say she

has a true impairment down the road."  Id. at 434.


Having reviewed the evidence of record, the court cannot

conclude that the ALJ erred in his consideration of Dr.

Mollano's opinion that claimant suffers from a "permanent

impairment rating" or in his decision to afford it little

evidentiary weight.

IV.  <u>The ALJ's Finding are Properly Supported</u>.

Finally, claimant generally asserts that the ALJ's factual findings are not supported by substantial evidence.  First, she claims the ALJ failed to adequately support his findings concerning her physical limitations.  Specifically, she seems to claim that the ALJ failed to adequately account for the symptoms of her fibromyalgia.  The court disagrees.

The ALJ amply supported his conclusions about claimant's physical limitations with citations to record evidence.  As to claimant's fibromyalgia, it is true that a rheumatologist formally diagnosed claimant with fibromyalgia (and the ALJ properly determined that it is a "severe" impairment).  But, the symptoms of that impairment (and the extent to which they impose limitations upon claimant) are, at best, unclear.  Dr. John Kwock, the non-examining physician who reviewed claimant's medical records and testified at the first hearing explained it well:

> [Claimant] also carries a diagnosis of fibromyalgia,
> but I believe that diagnosis would be equivocal.
> There are two opposing findings in the record, but we
> will list it [as a severe impairment].
>
> &ast; &ast; &ast;
>
> There was an examination by a rheumatologist and
> they probably are the best people for making the
> diagnosis of fibromyalgia.  On her examination, she

had found 11 of the 18 tender points that the American
College of Rheumatology has recommended would
substantiate the diagnosis of fibromyalgia.

However, she also had stated in the assessment that
somatic complaints are far out of proportion to
physical findings and so - and also in the upper
portions, she said pretty much every single joint is
tender; there is no synovitis point or over-lying
erythema on any of her peripheral joints on
examination.  She did include fibromyalgia as one of
her conclusions.

A consultative examination [was] done in February of
2017, that examiner made a point of saying no loaded
tenderness on palpation of the spinous process or
paraspinal muscles.

And so we have one examiner that did not really find
any tenderness that would've been part of those 18
tender points for making the diagnosis fibromyalgia.
[The] rheumatologist did find 11 out of the 18 tender
points, but she has some concerns as to the validity
of those findings, and so that's mainly the reason I
say that we're going to list fibromyalgia, but I
believe the diagnosis might be equivocal.

Admin. Rec. at 67-68.


        In short, the record amply supports the ALJ's conclusions

about the physical limitations imposed upon claimant as a result

of her fibromyalgia.


        Claimant also takes issue with the ALJ's decision to

discount the opinion of Dr. Mollano, as expressed in his letter

dated December 9, 2014.  But, as discussed above, the ALJ's

decision to give that particular opinion "little evidentiary weight," Admin. Rec. at 29, is fully supported by the record.

## Conclusion

The ALJ's written decision in this case is comprehensive and his findings and conclusions are well-supported by the record. Judicial review of that decision is both limited and deferential. This court is not empowered to consider claimant's application de novo, nor may it undertake an independent assessment of whether she is disabled under the Act. Consequently, the issue before the court is not whether it believes claimant is disabled. Rather, the permissible inquiry is "limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). Provided the ALJ's findings are properly supported by substantial evidence - as they are in this case - the court must sustain those findings even when there may also be substantial evidence supporting the contrary position. Such is the nature of judicial review of disability benefit determinations. See, e.g., Tsarelka v. Secretary of Health & Human Services, 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial

evidence."); <u>Rodriguez v. Secretary of Health & Human Services</u>, 647 F.2d 218, 222 (1st Cir. 1981) ("We must uphold the [Commissioner's] findings in this case if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.").

Having carefully reviewed the administrative record and the arguments advanced by both the Commissioner and the claimant, the court concludes that there is substantial evidence in the record to support the ALJ's conclusion that claimant was not disabled, as that term is used in the Act, at any time prior to the date of his decision (June 20, 2018). The ALJ's determination of claimant's RFC, his stated reasons for crediting some medical opinions while discounting others, and his analysis of claimant's subjective allegations of disabling symptoms are well-reasoned and supported by substantial evidence.

For the foregoing reasons, as well as those set forth in the Commissioner's legal memorandum, claimant's motion to reverse the decision of the Commissioner (document no. 7) is denied, and the Commissioner's motion to affirm his decision (document no. 9) is granted. The Clerk of the Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

January 10, 2020

cc:  Brenda M. Golden Hallisey, Esq.
     Lisa G. Smoller, Esq.